## Mitchell *v.* Schreiner, Appellant.

*Principal and agent—Sale of property—Commissions—Serving two masters.*

The rule of public policy which forbids an agent for the sale of property to become entitled to compensation from both vendor and vendee, may be waived by an express agreement between the parties, but such waiver cannot be inferred either from knowledge by one of the parties of the fact that the rule had been violated or from mere silence or failure to dissent at the time, or from all these combined. Nothing short of clear and satisfactory proof of agreement to waive the rule can be required as sufficient for the purpose. The mere fact that the agent told one of the parties that he was acting for both will not fix a waiver of the rule on the party thus informed in the absence of any agreement on his part to a waiver.

Argued May 4, 1910. Appeal, No. 189, April T., 1910,

by defendant, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1907, No. 322, on verdict for plaintiff in case of Charles G. Mitchell v. John C. Schreiner.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Reversed.

Assumpsit to recover commissions for sale of real estate.   Before FRAZER, P. J.

The court charged as follows:
[The defense set up is twofold: first, that Mr. Mitchell was representing both Mr. Schreiner and Mr. Cullen, and if that is the case, Mr. Mitchell cannot recover, for where a broker represents two parties without disclosing the fact to his principals, he cannot recover commissions from either party.] [3]   A broker, as we said to you a moment ago, owes the utmost fidelity to his principal, and the law prohibits him from serving two principals, or serving both the buyer and the seller, for the reason that he may not give one of his principals the consideration the principal is entitled to, if it is to his advantage to give the other principal better consideration; in other words, his compensation might be greater from one principal than the other principal, and that greater compensation would influence his judgment, and the principal paying the smaller commission would receive less consideration at the hands of the broker; and for that reason, the law says he cannot recover.   In referring to the employment of a broker by two persons, our Supreme Court have quoted from the Bible in saying that no man can serve two masters.

[Mr. Mitchell says that on the afternoon they visited the Jackson street property he told Mr. Schreiner he represented Mr. Cullen and would receive a commission from Mr. Cullen in making the transfer.   If that is true, Mr. Schreiner had knowledge that Mr. Mitchell was acting for both parties, and the fact that he was acting for both parties would not, under those circumstances, pre-

vent him from receiving a commission from Mr. Schreiner. Mr. Schreiner, however, denies that. He says no such information was given him and he did not know who the owner of the lots he was purchasing was until Mr. Mitchell came to his house with the agreement and he saw Mr. Cullen's name in the agreement. And he says then nothing was said to him about Mr. Mitchell acting as the agent for Mr. Cullen, and Mr. Schreiner presumed he was acting as his agent merely. That will be the first question for you, gentlemen, to determine, and in determining that, you will have to consider the evidence of both parties as to whether or not Mr. Mitchell informed Mr. Schreiner he was acting for Mr. Cullen as well as himself. If he did not inform him of that fact, he cannot recover, and the verdict must be for defendant. If he did inform him, he can recover unless—and that brings us to the other defense], [4] which is that at the time Mr. Mitchell visited the house of Mr. Schreiner, and at that time Mr. Schreiner signed the agreement it was with the understanding it was not to be binding upon him until Mrs. Schreiner had seen the property and was satisfied with it, and if she was not satisfied with the property, the agreement was not to be binding and was to be of no effect.

People have a right to make any kind of a contract or agreement they see fit, and if, when Mr. Mitchell went to the house of Mr. Schreiner and the agreement was discussed—and it appears they were there pretty late, probably from eleven or half-past eleven until two or half-past two in the morning—it was signed by Mr. Schreiner with the understanding, as he says, that Mr. Mitchell was to hold it until Mrs. Schreiner could see the property and determine whether she was satisfied with it, and if she was not satisfied, it was to be of no effect, Mr. Mitchell cannot recover in this case, because there was no sale of the property, as Mr. Schreiner notified him shortly afterwards that Mrs. Schreiner was not satisfied with the property.

Mrs. Schreiner says she was present that evening when

Mr. Mitchell was at their house and heard the conversation, and took part in it, and Mr. Mitchell, before Mr. Schreiner came in, had told her about the location of the Jackson street property; that it was in a good locality, upon a street that was laid out, although not paved in front of these lots—graded and curbed—and within easy walking distance of the street cars. She says when she went to the east end to look at the lot, she found it quite a little distance from the street cars, and the grade of the street was too steep for her; that she could not walk up that grade from the street cars, and for that reason she declined to sign the deed or agree to the purchase of the property by her husband. Mr. Mitchell denies that. He admits telling her where the property was and telling her its location, but denies there was any understanding to the effect that the contract was not to become binding unless approved by Mrs. Schreiner.

Those are the two questions in this case. The employment of Mr. Mitchell is admitted, and it is also admitted he was to receive two per cent in the event of a sale or trade of the property being made; and it is admitted that he secured Mr. Cullen as a purchaser of the property. As we said a moment ago, if that were all there was in the case, he would be entitled to recover. [Then you come to the defense, and if either of the defenses is established, Mr. Mitchell cannot recover; that is, if you are satisfied from the evidence that Mr. Mitchell was acting for both, and he admits he was, and did not give Mr. Schreiner notice of that fact, he cannot recover; or if he did give him notice of that fact and the sale was made subject to the approval of Mrs. Schreiner, and Mrs. Schreiner in good faith failed to approve the sale, he cannot recover.] [5]

Verdict and judgment for plaintiff for $197.01. Defendant appealed.

*Errors assigned* were (3–5) above instructions, quoting them.

*Edward Schreiner*, for appellant, cited: Rice v. Davis, 136 Pa. 439; Evans v. Rockett, 32 Pa. Superior Ct. 365; Linderman v. McKenna, 20 Pa. Superior Ct. 409; Farnsworth v. Hemmer, 83 Mass. 494.

*George H. Rankin*, for appellee, cited: Hipple v. Laird, 189 Pa. 472; Burchfield v. Griffith, 10 Pa. Superior Ct. 618.

OPINION BY RICE, P. J., July 20, 1910:

It is a rule of public policy, subject to such exception as we are about to notice, that an agent for the sale of property cannot at the same time act as agent for the purchaser thereof and become entitled to compensation from both vendor and purchaser or from either: Everhart v. Searle, 71 Pa. 256. Whilst this rule may be waived by an express agreement between the parties, yet it is well settled that such agreement cannot be inferred either from knowledge of the fact that the rule has been violated or from mere silence or failure to dissent at the time, or from all these combined. Nothing short of "clear and satisfactory proof of an agreement" to waive the rule can be regarded as sufficient for this purpose: Rice v. Davis, 136 Pa. 439; Penna. R. R. Co. v. Flanigan, 112 Pa. 558; Finch v. Conrade's Executor, 154 Pa. 326; Marshall v. Reed, 32 Pa. Superior Ct. 60; Evans v. Rockett, 32 Pa. Superior Ct. 365. Viewing the answers to the plaintiff's points, quoted in the first and second assignments of error, in the light of these principles, we are constrained to the conclusion that the instructions did not go far enough to put clearly before the jury the rule applicable to the case, if they believed the defendant's testimony. Standing by themselves they were calculated to create the impression that if the plaintiff disclosed to the defendant the fact that he was acting for both parties the rule under consideration would not prevent recovery. The same idea was conveyed more clearly by instructions quoted from the general charge in the fourth assignment. Referring to

the testimony of the plaintiff to the effect that he told the defendant that he would receive a commission from Cullen, the other party to the proposed exchange, the learned judge said: "If that is true, Mr. Schreiner had knowledge that Mr. Mitchell was acting for both parties, and the fact that he was acting for both parties would not, under these circumstances, prevent him from recovering a commission from Mr. Schreiner." Then after referring to the defendant's testimony in denial of what the plaintiff had testified to, the learned judge instructed the jury that the first question for them to determine was whether the plaintiff informed the defendant that he was acting for Cullen as well as himself, and that if the plaintiff did not inform the defendant of that fact he could not recover, but if he did inform him he could recover, unless the other defense, not necessary to be noticed here, was made out. It is thus seen that the plaintiff's right to recover was made to depend only on the question as to what he informed the defendant, and not upon the question whether the defendant expressly agreed to the double employment and the double compensation. It is apparent that this assignment cannot be overruled without establishing a precedent that would be in irreconcilable conflict with the rule laid down in Rice v. Davis and the cases that follow in its lead. Nor was the error cured by the affirmation of the defendant's first point. The jury would endeavor to obey all the instructions of the court, and in doing so might naturally suppose that they might infer the defendant's assent from the mere fact of his silence and failure to dissent when, as alleged, the plaintiff informed him that he was employed by the other party. In concluding the opinion in Rice v. Davis, the court said: "Rules of law, such as that under consideration, intended to be preventive of the possibility of wrong, rather than remedial of actual wrong, should be rigidly enforced, unless it clearly appears that the parties, for whose protection they were intended, have, with full knowledge of all the circumstances, agreed to waive their rights there-

under." The jury might have inferred, from the instructions contained in the general charge and the answers to the plaintiff's first two points that the rule is less rigid than it is declared to be in the cases cited, and as it is impossible to determine with certainty whether they followed those instructions, or the instructions intended to be conveyed by the affirmation of the defendant's point, the case must go back for retrial.

The judgment is reversed and a venire facias de novo awarded.