## Fulton, Appellant, v. Walters.

*Contract—Sale of land—Compensation—Principal and agent—Fraud.*

Where an owner of land agrees to pay to another person as compensation for securing a purchaser for the land all above a minimum sum per acre, and a fixed sum in addition, and such person sells the land for an amount above the minimum, the fact that he refuses to tell the owner for how much he sold the land, or states to him that he sold it at the minimum, will not deprive him of his right to recover the additional fixed sum agreed upon. In such a case there is no such relation of trust and confidence between the parties as will require a disclosure to the owner of the terms of the sale.

There is no principle of law that obliges one who has made an honest contract with another, to communicate to that other anything subsequently happening that might be an inducement to that other to repudiate his contract.

Everhart v. Searle, 71 Pa. 256, distinguished.

Argued May 7, 1906. Appeal, No. 289, Jan. T., 1906, by plaintiff, from judgment of Superior Court, April T., 1905, No. 1, reversing judgment of C. P. Fayette Co., Dec. T., 1900, No. 253, on verdict for plaintiff in case of E. D. Fulton v. Allen S. Walters. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and STEWART, JJ. Reversed.

Appeal from Superior Court.

The facts appear by the opinion of the Supreme Court, and by the report of the case in 28 Pa. Superior Ct. 269.

*Error assigned* was the judgment of the Superior Court.

*H. S. Dumbauld*, of *Sterling, Higbee, Dumbauld & Brown*, with him *A. D. Boyd*, for appellant.

*H. L. Robinson*, of *Robinson & McKean*, for appellee.

OPINION BY MR. JUSTICE STEWART, June 27, 1906:

The facts of this case differ so materially from those in Everhart v. Searle, 71 Pa. 256, that the doctrine of the latter is without application here. A brief recital will make this obvious.

In Everhart v. Searle, the fact that Searle was agent for both buyer and seller was admitted. He had a separate written contract with each. He was to receive from Flagg as his compensation for making sale of the land, all above $125 per acre; he was to receive from Everhart $500 for his services in assisting him in the purchase. Flagg knew nothing of the contract with Everhart, and Everhart knew nothing of the contract with Flagg. As stated by THOMPSON, C. J., who delivered the opinion, that case as presented involved " the question whether the same person may be an agent in a private transaction for both parties without the consent of both, so as to entitle him to compensation from both or either." A negative answer to this proposition necessarily determined the case adversely to Searle. No such question arises here. The verdict of the jury in the present case was a distinct finding that the agreement between Fulton and Walters was that if the former would find a purchaser for the land before Walters lost control of it by expiration of his option on part, he should have all in excess of $275 per acre, and that Walters would pay him $500 in addition for his services. There is no suggestion anywhere that Fulton was employed by Martin, the purchaser, or that he stood in any relation of trust and confidence toward him. His attitude with respect to Martin was exactly that of Walters. Between Fulton and Martin there was a plain and palpable antagonism of interest, as much so as there would have been between Walters and Martin had not Fulton intervened. It was the interest of Fulton to obtain the largest possible price for the land—the larger the price the larger his compensation; it was the interest of Martin to secure the land at the least possible price. Manifestly this was not a case of divided allegiance, and it is impossible to bring Fulton's claim for $500 compensation under condemnation of that principle which defeated the claim of Searle. If it is to be disallowed it must be for some other reason than that Fulton had engaged to serve two masters, for he had not. With the reasonableness of his contract with Martin we have nothing to do. It was a contract between parties competent to make it, and it offends against no rule of law. What he received by way of excess in price obtained over the $275, required by Walters, is not to be considered. He is entitled to

recover in addition his $500, unless he has forfeited his right to it by some fraudulent practice, or what would be its equivalent, failure in some duty he owed to Walters. The latter is that the appellee would derive from the transaction, because of the fact that Fulton refused to disclose to Walters how much in excess of $275 per acre Martin was paying for the land ; or, to put it somewhat stronger, and adopting the statement of Walters in regard to the matter, because he represented to Walters that he was not getting anything out of the transaction. Whether it was concealment or misrepresentation is immaterial. We are not dealing with questions of casuistry, but with legal effect and consequence. The reasoning that would forfeit Fulton's right to compensation on this account, assumes that Fulton was Martin's agent in the transaction. If agency existed, it was such a qualified and restricted one that to apply to it the strict rule which governs that relation ordinarily, would be unreasonable and work unjust results. It may dignify the employment to call it an agency, but it lacks every essential feature and characteristic of agency as that relation is understood in law. Agency means delegated authority, and always implies some trust or confidence in the exercise of that authority. What authority was delegated to Fulton ? Absolutely none that was not given to all others in the same measure. He was without authority to make a binding contract for Walters with respect to the land, or to obligate him for a penny on any account ; he was not authorized to do or receive anything in his name or on his behalf for which there could be an accounting. Nor was Walters bound to wait on Fulton. He could have sold all the land to anyone meanwhile without regard to Fulton, to whom he had given no exclusive privilege. Had Walters announced a public sale of his land, the man who posted his advertisements would have been quite as much his agent as Fulton was under the arrangement that existed. What duty did Fulton owe to Walters ? The answer must be the same—none. How could any duty arise when Fulton, by nothing he could do, could disappoint, or compromise, or prejudice, or obligate Walters ? Had it been an agency pure and simple, of course it would have been Fulton's duty to acquaint his principal with the price at which Martin was getting the land ; but under

their agreement Fulton was to get, and was allowed to retain, all in excess of $275 per acre. It was no concern of Walters, however interesting it might have been to him, to know what Fulton was making out of it. He was not prejudiced by having the information withheld. It is replied to this, that prejudice is not a consideration in such matters ; that public policy condemns such conduct as that of Fulton ; but this again is based on the assumption that the relation of trust and confidence existed, whereas there was nothing of the kind. It is said that good faith required full disclosure by Fulton, so that Walters, being apprised of the real value of his land, might have the opportunity of declining to sell it if he so desired. The argument in effect is, that good faith required Fulton to supply Walters with the occasion, opportunity and inducement to practice bad faith with him. We know of no principle of law that obliges one who has made an honest contract with another, to communicate to that other anything subsequently happening that might be an inducement to that other to repudiate his contract.

Good faith certainly did not require Fulton to substitute for the advantage he would derive under his contract, if kept and fulfilled by Walters, a claim in damages for a breach of that contract. A careful review of the case upon the law and the evidence, leaves us entirely satisfied that the judgment of the court below in overruling the motion for judgment for defendant non obstante veredicto was correct.

The judgment of the Superior Court is reversed and the judgment of the court below is reinstated and affirmed.