# Greene *v.* Hawtof, Appellant.

*Brokers—Real estate brokers—Commissions—Principal and agent—Concealment of material facts by broker—Effect.*

In an action of assumpsit by a real estate broker for a commission, it appeared that the plaintiff secured a contract for the sale, and that the person, named in the contract as the purchaser, was not the real buyer. It further appeared that the plaintiff concealed the name of the real buyer from the defendant and that the latter, on the disclosure of the facts, refused to proceed with the negotiation. Under such circumstances, the defendant was entitled to binding instructions in his favor.

The intentional concealment of material facts from the knowledge of his principal, by a broker employed to sell real estate, will deprive him of his right to commissions for procuring a buyer.

Argued October 28, 1925. Appeal No. 282, October T., 1925, by defendant, from judgment of M. C. Philadelphia County, December T., 1923, No. 1486, in the case of E. Jay Greene v. Max Hawtof. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Assumpsit by a real estate broker for a commission. Before RENSHAW, J.

The facts are stated in the opinion of the Superior Court.

Verdict for the plaintiff in the sum of $362.50 with interest and judgment thereon. Defendant appealed.

*Errors assigned*, among others, were the various rulings of the evidence and the charge of the court.

*B. D. Oliensis*, for appellant.

*Alex. M. DeHaven*, for appellee.

OPINION BY HENDERSON, J., February 26, 1926:

The plaintiff, a real estate broker, seeks to recover a commission claimed to be due from the defendant

because of the former's services in procuring a purchaser for some real estate which the defendant desired to sell. The fact of the agency is not disputed nor that the plaintiff secured a contract for the sale of the lot at the price named by the defendant. Defense is made, however, on the ground that the plaintiff concealed from the defendant a material fact in the transaction, important to the defendant, that the person named in the contract as the purchaser was not the party to whom the land was to be conveyed, but was a "straw man" procured by the plaintiff to act in the capacity of a purchaser; on the disclosure of which situation, the defendant refused to proceed further with the negotiation—he not being on good terms with the proposed purchaser and unwilling to sell to him. The person named as purchaser in the agreement prepared by the plaintiff was William Sorkin. The person to whom the plaintiff intended to have the title made was Armin A. Holzer. The transaction is thus described in the cross-examination of the plaintiff:

"Q. Now you give the name of the buyer in this transaction William Sorkin. That is correct, is it not?

"A. Yes.

"Q. Who is William Sorkin?

"A. Mr. Sorkin used to be a friend of mine that I often used in business transactions.

"Q. He was nothing but a mere straw man in this?

"A. Absolutely correct, just a straw party.

"Q. The real buyer all the time was Mr. Holzer?

"A. Absolutely, Armin A. Holzer.

"Q. You had Mr. Holzer's identity disguised under Mr. Sorkin's name?

"A. Surely.

"Q. Why did you?

"A. Because Mr. Holzer and Mr. Hawtof were not on good terms.

"Q. You knew, of course, that if you disclosed the

real buyer there would be a hitch and there wouldn't be any agreement?

"A. I didn't know absolutely, but I surmised,

"Q. And in order to avoid Mr. Hawtof's refusal to go into the transaction you thought it would be much more sensible to call up a straw man?

"A. You are absolutely correct."

It was disclosed in the transaction of the business that Holzer had some interest in the land or a right to a participation in the proceeds of the sale, and it was deemed advisable therefore by the plaintiff to include Holzer and wife with the defendant and his wife as vendors to Sorkin. As the contract appears therefore the plaintiff signed as agent for Max Hawtof et ux et al, and Holzer and wife joined with Hawtof and wife as vendors in approving the contract with Sorkin. The evidence of the defendant which is not contradicted was that he would not sell to Holzer and this was evidently known to the plaintiff when the arrangement between the latter and Sorkin was made. As the case stood when the contract of sale was completed the defendant and his wife and Holzer and his wife were selling to Sorkin, but Sorkin was not the purchaser and was not to pay for the property. The owner was induced to sign the agreement of sale through the suppression by the plaintiff of the fact that another person, Holzer, was the purchaser. The trial judge submitted the case to the jury on the inquiry whether the defendant had agreed to pay the plaintiff a commission in the event that he (the plaintiff) produced a purchaser of the property? It is evident from the testimony that the defendant was misled as to the identity of the purchaser. The motive for the misrepresentation practiced was that a sale would not be made by the defendant to Holzer. The nature of the difference between them is not disclosed in the testimony, but it was of sufficient importance in the mind of the defendant that he

would not sell his property to Holzer. The question for determination is whether on such a state of facts an agent may recover compensation? It is an elementary rule in the law of agency that a broker is to be regarded as an agent of the seller, and that it is his duty in such capacity to act in the utmost good faith towards his principal, and that if he fail so to do, he is not entitled to compensation for service. When the plaintiff undertook to sell the defendant's land, it was his duty to disclose to his principal the name of the purchaser rather than to turn him over to an unknown and presumably irresponsible party. It was a matter for determination of the owner whether he would accept a straw man rather than the actual purchaser. Good faith would not permit the concealment of an arrangement which was intended to promote the interest of the purchaser rather than that of the owner. On the plaintiff's own admission his intention was to mislead the defendant into a sale which would not otherwise have been made. This was not consistent with the "utmost good faith" due the defendant from the plaintiff in the circumstances. The principle is discussed in Pratt v. Patterson's Executors, 112 Pa. 475, in which it was held that the intentional concealment of material facts from the knowledge of a principal by a broker employed to sell real estate would deprive him of his commission in procuring a buyer. This was a case in which the name of an actual purchaser was concealed and the name of a straw man used as a means of acquiring the title. In Allegheny By-Product Co. v. J. H. Hillman & Sons Co., 275 Pa. 191, the rule of duty is restated in the following language: "The agent stands in the capacity of a fiduciary to his principal, and, in all of the dealings he must serve his employer with the utmost good faith and loyalty. It is his duty to make known all matters affecting transactions which may be of importance to the one for whom he acts." Applying the principle

stated to the uncontroverted facts in the case before us, we are of the opinion that the plaintiff did not meet the demand implied in his engagement to sell the defendant's property. The latter was entitled to a full disclosure of the facts in the transaction relating to the sale, one of which facts was the identity of the proposed purchaser. The defendant was therefore entitled to binding instructions in his favor and to judgment non obstante veredicto on the whole record.

The judgment is reversed, the rule is reinstated and judgment is now entered for the defendant non obstante veredicto.